**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   15-50339 |
| Plaintiff-Appellee, | D.C. No. 3:14-cr-01429-JAH-1 |
| v. | |
| JAMES FOLSOM, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted August 30, 2016
Pasadena, California

Before:  SILVERMAN, FISHER, and WATFORD, Circuit Judges.

**1.**  Sufficient evidence supports James Folsom's conviction for making false statements to a financial institution.  Folsom stated on his loan application that, at the time he applied for the loan, he had no outstanding judgments against him.  A rational jury could conclude that Folsom knew that this statement was false, given

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

the government's evidence that Folsom was aware of the existing judgment against him for approximately $250,000 when he applied for the loan. Folsom also stated on the loan application that he was not delinquent or in default on any federal debt, but a rational jury could conclude that Folsom knew this statement was false as well. The government presented evidence that, beginning in February 2013, Folsom had failed to make the required monthly payments on his outstanding judgment, and that he had been in contact with the U.S. Attorney's Office about his need to begin making the payments. Finally, a rational jury could also conclude that Folsom knowingly made a false statement when he attested that, in the preceding three years, he had held ownership in his primary residence solely in his own name. The government presented evidence that Folsom knew that the title for his primary residence had been held in the name of a corporation, Rosemont Mission. In light of this evidence, a rational jury could conclude that Folsom lacked a good-faith belief in the truthfulness of these statements.

**2.** Folsom also challenges the sufficiency of the evidence supporting his convictions for bank and wire fraud, but none of the arguments he asserts have merit.

First, Folsom argues that the government failed to establish that Chase sustained an actual loss on the loan. That argument lacks merit because a financial

institution need not incur a loss in order to be a victim of bank or wire fraud. *See*

*United States v. Mason*, 902 F.2d 1434, 1442 (9th Cir. 1990).

Second, Folsom argues that Chase was not deprived of a cognizable property interest within the scope of the bank and wire fraud statutes. We disagree. Had Folsom signed the quitclaim deed as he was required to do in order to obtain the loan, Chase would have been able to perfect a security interest in Folsom's residence. That would-be security interest falls within the broad scope of the property interests protected by the bank and wire fraud statutes. *See McNally v. United States*, 483 U.S. 350, 356 (1987).

Finally, Folsom argues that the fraudulent scheme did not include his refusal to sign the quitclaim deed months after the loan closed because the title company's failure to include that deed in the closing packet was beyond his control. We agree that the evidence did not show Folsom intended that the title company omit the quitclaim deed, but our inquiry does not end there. We have previously held that, when reviewing the sufficiency of the evidence to support a fraud conviction, we must make allowances for the reality that schemes to defraud are often "opportunistic enterprises" that may "adapt to changed circumstances." *United States v. Tanke*, 743 F.3d 1296, 1305 (9th Cir. 2014). The government's evidence at trial supported a finding that Folsom decided to capitalize on the title company's

error by refusing to sign the quitclaim deed. A rational jury could conclude that the fraudulent scheme evolved after Folsom learned of the title company's mistake.

For the same reason, we reject Folsom's argument with respect to counts 4 and 5 that emails sent after the loan closed could not support his convictions because the fraudulent scheme purportedly ended when the loan closed. *See id.*; *United States v. Lo*, 231 F.3d 471, 478–79 (9th Cir. 2000) (affirming mail fraud convictions for mailings sent after illegally obtained loan proceeds were received by the defendant).

**AFFIRMED.**